# Exhibit 1

04/07/2003  09:06    20267879    PAGE  02

GOVERNMENT OF THE DISTRICT OF COLUMBIA
Department of Employment Services

Office of Hearings and Adjudication



(202) 671-2233-Voice
(202) 673-6938-Fax

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| EDNA MCMANUS, | ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA | ) |
| DEPARTMENT OF CORRECTIONS, | ) |
| | ) |
| Employer. | ) |

OHA No. PBL-02-017(B)
DCP Nos. 002805 and 022683

## FINAL COMPENSATION ORDER

This proceeding arises out of a claim for disability compensation benefits filed pursuant to the provisions of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, as amended, D.C. Code 1981, §§1-624.1 *et seq.*

After careful review of the entire record in the above-styled case, the Hearing Officer's Recommended Compensation Decision is hereby adopted as the Final Compensation Order.

Adversely affected parties, who may not be satisfied with this final decision, may appeal this case to the Director of the Department of Employment Services within thirty (30) days from the date of this Order. The Petition for Review should be filed with the Director on the form attached to this order.

So Ordered.

Reginald H. Berry
Assistant Director for Labor Standards

APR - 4 2003
_____
Date

Attachments

1. Copy of Hearing Officer's Recommendation
2. Petition for Review Form
3. Appeals Rights

---

GOVERNMENT OF THE DISTRICT OF COLUMBIA
Department of Employment Services

Office of Hearings and Adjudication



(202) 671-2233-Voice
(202) 673-6938-Fax

In the Matter of )
)
EDNA MCMANUS, )
)
Claimant, )           OHA No. PBL 02-017(B)
)           DCP Nos. 002805 and 022683
v. )
)
DISTRICT OF COLUMBIA )
DEPARTMENT OF CORRECTIONS, )
)
Employer. )

Appearances:

AMY VRUNO, ESQUIRE                    GAIL L. DAVIS, ESQUIRE
For the Claimant                      For the Employer

Before:

ROBERT R. MIDDLETON
ADMINISTRATIVE LAW JUDGE

## RECOMMENDED COMPENSATION ORDER

### STATEMENT OF THE CASE

This matter arises out of a claim for disability compensation benefits filed pursuant to the provisions of Subchapter XXIII of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, as amended, D.C. Code 2001, §§1-623.1 *et seq.*, (hereinafter, the Act).

After timely notice, a full evidentiary hearing was held on January 22, 2003 before Robert R. Middleton, Administrative Law Judge. Edna McManus (hereinafter, claimant) was

represented by Amy Vruno, Esquire, and testified in her own behalf. The District of Columbia Department of Corrections (hereinafter, employer) was represented by Gail L. Davis, Esquire, Assistant Corporation Counsel. Claimant's Exhibit (hereinafter, CE) Nos. 1-12 and Employer's Exhibit (hereinafter, RE) Nos. 1-3, described in the Hearing Transcript (hereinafter, HT) were admitted into evidence. The record closed on January 31, 2003 upon receipt of the HT.

EDNA MCMANUS

BACKGROUND

Claimant has worked for employer since 1984, with most of that time assigned as a correctional officer at either the Lorton Correctional Facility or the D.C. Jail. During the course of her employment, claimant has sustained, or alleged, numerous work related injuries. The first incident involved a lumbar strain, occurring in 1990, which caused claimant to miss many months from her regular duties. On November 29, 1995, claimant was involved in another incident wherein claimant alleged she got her right arm closed in the doors of a malfunctioning elevator.[1] Claimant stopped working and sought to undergo surgery to her right upper extremity. On October 7, 1998, after approval was granted by the Third Party Administrator (hereinafter, TPA), Dr. Jeffrey Lovallo, hand specialist, performed a right carpal tunnel release and right de Quervain's release. By December 21, 1998, Dr. Lovallo released claimant to work after finding she was physically capable of performing her duties and responsibilities without restrictions. Dr. Lovallo prescribed braces to alleviate claimant's discomfort.

The record revealed since claimant had remained away from her job assignment position for longer than two years, there was no position to which claimant might return. Claimant sought a position as lead legal instruments examiner with employer in January 1999, but was unable to secure the position until October 1999. The position required extensive keyboarding as well as

reaching overhead to retrieve inmates' files. Claimant herein, who has worn braces at Dr. Lovallo's recommendation since the 1998 surgery, attempted to perform her duties as best she could.

The record reveals between 1999 and 2001, claimant treated intermittently with Dr. Lovallo for continuing complaints of numbing pain to her right hand arising from the 1995 work related injury. Dr. Lovallo also treated claimant's left hand and prescribed Naprosyn, Flexeril and Daypro to alleviate the pain. On January 19, 2002, claimant sought medical treatment with Dr. Rafik Muawwaad, orthopedic surgeon, for followup treatment to claimant's November 29, 1995 right upper extremity injury. On February 27, 2002, claimant returned to Dr. Muawwad, whose medical review of a February 21, 2002 EMG test reported claimant had C6 radiculopathy and left carpal tunnel syndrome. No mention was made to Dr. Muawwad, however, of an alleged February 26, 2002 work related incident to claimant's left hand. Claimant stopped working as a result of the pain from the left wrist injury and has not returned to duty for employer herein.

On February 26, 2002, while pulling a list of inmates' case files, claimant experienced a form of paralysis in both her right and left hands, causing her to drop the stack of case jackets to the floor. Another correctional officer saw what had happened and aided claimant by picking up the rest of the stack of case files. In a timely fashion, claimant filed a claim for a work related injury to her left upper extremity with the Third Party

---

[1] The parties stipulated while the claim of injury was accepted for payment of claimant's medical expenses, wage replacement benefits were not authorized. HT-24.

04/07/2003  09:06    20267879                                    PAGE  05

## EDNA MCMANUS

Administrator (TPA).[2]

In keeping with its monitoring responsibilities, the TPA referred claimant to an independent medical examiner, Dr. Louis Levitt, board certified orthopedic surgeon. Dr. Levitt examined claimant, determined there were numerous reports which he did not have, and issued a qualified report, dated April 9, 2002, on claimant's medical status. RE-1. Following the issuance of an addendum to the report, dated June 18, 2002, Dr. Levitt opined there was no causal connection between claimant's alleged February 26, 2002 left upper extremity injury and the 1995 work related trauma. Dr. Levitt's medical opinion became the basis of the July 25, 2002 Final Order of Denial (hereinafter, Final Order). RE-2. Upon receipt of the Final Order, claimant sought legal counsel and timely filed an Application for Formal Hearing with the Office of Hearings and Adjudication (OHA).

### CLAIM FOR RELIEF

Claimant seeks temporary total disability (TTD) benefits from February 27, 2002 to the present and continuing until such time as she is capable of returning to her position as a lead legal instruments examiner. Claimant also seeks authorization for surgery to her left wrist in order to alleviate the pain. Finally, claimant seeks continuing medical treatment, including possible surgery, of her right wrist, which she argues has been aggravated by the typing and lifting duties required by the lead

---

[2]Although the exact date of claimant's filing of the February 26, 2002 claim is not part of the record, a reasonable inference has been drawn that it was filed in a timely fashion given the fact claimant had been processed, referred for an Independent Medical Examination, and evaluated by Dr. Levitt all by April 9, 2002.

legal documents examiner's position.[3]

### ISSUE

Whether claimant sustained an injury to her left wrist on February 26, 2002, and if so, the nature and extent thereof.

### FINDINGS OF FACT

As an initial matter, I hereby adopt the Findings of Fact contained in the November 17, 1999 Recommended Decision, which was adopted that same day as the Final Compensation Order.[4] In addition, I find the following as facts:

I find claimant is 50 years old, right hand dominant, five feet four inches tall, and weighs 118 pounds. I find claimant's present duties as a lead legal documents examiner require her to stand, sit, kneel, stoop, bend, reach overhead and type.

I find claimant resides at home with her young son and is assisted by the youth's father when

---

[3]On February 7, 2003, claimant filed a motion for the undersigned Administrative Law Judge to reconsider claimant's claim of right carpal tunnel injury arising out of the February 26, 2002 work injury. Employer had argued persuasively there was no evidence of a claim for a right carpal tunnel injury occurring on the abovementioned date, while claimant had argued she had indeed filed for an injury to both hands and pointed to the use of two case file numbers by the TPA in issuing its Final Order on July 25, 2002. Given the apparent deadlock on the issue and the lack of irrefutable evidence on the record, this matter has been severed and a separate proceeding shall be held on this question subsequent to the issuance of the Final Compensation Order herein.

[4]Edna McManus v. District of Columbia Department of Corrections, OHA No. PBL 94-11(B), OBA No. 002190.

EDNA MCMANUS                                                                    PAGE 4

heavy lifting or moving chores are involved. I find claimant is able to drive although she does so only after carefully monitoring her medication. I find claimant stopped working after the 1995 work related injury and remained off duty for three years until she was able to undergo surgery to the right hand.

I find claimant returned to work for employer in 1999 after securing a position as a lead legal instruments examiner for employer herein. The record is undisputed, and I so find, this position consists primarily of clerical responsibilities and requires claimant to type as many as seven hours daily and to spend the other hour filing the inmates' case files.

I find claimant incurred an injury on October 10, 2000 when the ice machine door which claimant was attempting to open slipped out of her hands and caused the machine to fall on claimant's feet. I find claimant sustained injuries to her right arm, leg, thighs, hands and both feet; and her injuries were accepted as compensable by the TPA. I find continuation of pay was authorized for up to 21 days and medical expenses causally related to the accidental injury were determined to be compensable. Thereafter, I find claimant returned to her position as legal documents examiner.

On February 26, 2002, after responding to a request by her supervisor that she pull the files of a long list of inmates, I find claimant incurred a left hand injury at work when she shifted a stack of inmate folders with her right hand and placed them on her left arm and wrist to carry them to the desk for review. I find claimant's hands became extremely weak similar to a form of paralysis. I find claimant was unable to hold the files in her hands thereby causing her to drop the files onto the desk and the floor. I find claimant soon notified her supervisor of the incident and timely filed a claim with the TPA. I find claimant stopped performing the duties of a lead legal instruments examiner on February 26, 2002 and sought medical treatment with Dr. Muawwad on February 27, 2002; claimant had been treating with Dr. Muawwad since January 19, 2002. I find claimant has not returned to duty for employer herein.

DISCUSSION

After a thorough review of the parties' arguments, I have determined, to the extent an argument is consistent with the findings and conclusions herein, the argument is accepted; to the extent an argument is inconsistent therewith, it is rejected.

Claimant argues there are a number of factors which have caused her disability: the November 29, 1995 injury involving her right arm getting caught in an elevator; the three year period of time it took to obtain approval for surgery to the right hand; the October 10, 2000 incident involving the ice machine handle slipping out of her hands; and the February 26, 2002 incident wherein claimant dropped a number of case files due to her hands suddenly becoming tingly and numb. Given her seven hour per day responsibility for typing inmate information into their files, claimant argues she requires surgical intervention and can not work until she receives left carpal tunnel surgery. Finally, claimant argues her right hand and wrist have been aggravated by the 2000 and 2002 injuries and require followup medical treatment, including possible surgery.[5]

_____

[5] See footnote 2, supra.

Employer argues any allegations of residual right wrist carpal tunnel syndrome must be rejected based upon Dir. Dkt. No. 17-99, dated May 17, 2001, which affirmed the November 17, 1999 Final Compensation Order; the Final Compensation Order rejected a claim for TTD benefits. Employer also argues the 2002 allegation of left carpal tunnel flare-ups was a matter merely contrived by claimant's physicians, since a consequential injury, as alleged, would have manifested itself much closer in time to the 1995 injury rather than seven years later. Finally, employer argues there was insufficient evidence of claimant's typing responsibilities to support a claim of left wrist injury arising from repetitive use.

After considering the arguments of the parties, and having weighed the medical evidence, I am persuaded claimant sustained a disabling work related injury on February 26, 2002. While the record is clear the medical reports of Drs. Ignacio and Muawwad had not been considered by the TPA in arriving at the findings set forth in the Final Order, I am persuaded said medical evidence is sufficiently probative and weighty to corroborate claimant's benefits request.

Pursuant to the Act, in order for an injury to be compensable, it must be sustained while in the "performance of. . . duty." D.C. Code 1981, §1-624.2. While this provision is not defined in the Act itself, it has been interpreted as mandating the injury arise out of and in the course of claimant's employment. *Allen v. D.C. Office of Personnel*, ECAB No. 88-33 (December 19, 1990). Professor Arthur Larson, in his authoritative work on workers' compensation law, opines "arising out of" refers to whether the injury was causally connected to the employment. "Course of

employment," on the other hand, has been interpreted as an injury which takes place where the employee may reasonably be expected to be. *See* 1 Larson, *The Law of Workmen's Compensation*, Section 6.00 *et seq.* (1989).

Following a review of the facts, I am persuaded claimant's February 26, 2002 incident at work clearly meets the requirements of a compensable work related injury. First of all, claimant's regular job duties consisted of keyboarding and entering a great deal of information into the inmates' personnel files, as well as actually pulling the files. Further, such activities were performed on employer's premises and required the use of employer's equipment. Claimant complained both hands became extremely weak when she began to feel sharp pains, like electric shocks, running up and down her left arm, after which claimant dropped the files on the desk and floor.

Although the record does not reveal claimant suffered any scrapes or bruises, claimant, due to her many hours spent on a daily basis typing computer entries, had felt incapable of actually holding the files in her hands. The February 26, 2002 event, which involved something going wrong with the human frame, occurred on employer's premises and at a time and place where claimant might reasonably be expected to be. I am persuaded, therefore, claimant suffered an injury which arose both out of and in the course of her employment.

In addition, according to Dr. Muawwad's February 27, 2002 medical report, claimant had recently undergone EMG and nerve conduction velocity studies which confirmed that she has bilateral C6 radiculopathy in

EDNA MCMANUS                                                    PAGE 6

addition to left carpal tunnel syndrome. Most of her symptoms were in the left wrist and moderately positive Tinel's signs and Phalen's signs were revealed. Dr. Ignacio stated "She may want to consider remaining off from work and continue with the treatments for the time being." CE-6.

I have carefully considered Dr. Muawwad's February 27, 2002 medical opinion which provided a recommendation which supports claimant's remaining away from her job duties. Also, there is no evidence of record employer attempted to provide an accommodation for claimant herein to allow her to continue to perform work related duties for employer herein. Rather, the record is clear claimant was to be required to perform the types of extensive typing and data input duties, on a seven hour per day basis, which would aggravate her already painful left wrist and arm. Accordingly, there was sufficient factual and medical evidence to support claimant's inability to perform her physical duties and responsibilities for employer herein because of a left wrist injury which had arisen both out of and in the performance of claimant's employment duties.

Based upon this record, I have accorded Dr. Muawwad's medical opinion great weight and have relied upon it rather than upon the medical opinion of Dr. Levitt. Dr. Muawwad's opinion was rendered almost contemporaneous with the injury involving the files. It is important to note in this forum, all things being equal, great weight will be given to the opinions of the treating physician. *Butler v. Boatman and Magnani*, OWC No. 044699, H & AS No. 84-348 (December 31, 1986). Having granted Dr. Muawwad's medical opinion great weight, I am persuaded claimant indeed incurred a work related injury on February 26, 2002, and should obtain the requisite medical treatment for this left wrist injury, including the requested surgery. In addition, I am persuaded claimant was physically unable to perform her regular employment duties subsequent to the February 26, 2002 work related injury, and as a result thereof, claimant was temporarily and totally disabled from the performance of her duties and responsibilities as a lead legal instruments examiner.

CONCLUSIONS OF LAW

Based upon a review of the record evidence, I hereby find and conclude claimant suffered a work related injury to her left wrist on February 26, 2002, and has remained temporarily and totally disabled as a result thereof.

EDNA MCMANUS                                                                    PAGE 7

RECOMMENDATION

I hereby recommend claimant's claim of a work related injury to her left wrist, occurring on February 26, 2002, be **GRANTED**. It is further recommended claimant's request for medical treatment associated with this work injury, including possible surgical intervention, be **GRANTED**. It is finally recommended claimant's request for TTD benefits from February 27, 2002 to the present and continuing until she can return to her employment duties, be **GRANTED**.


ROBERT R. MIDDLETON
ADMINISTRATIVE LAW JUDGE


        April 4, 2003
              Date